In the Matter of H. VICTOR NEWCOMB, an Incompetent Person.

FLORENCE W. NEWCOMB and HERMANN D. NEWCOMB, Appellants; H. VICTOR NEWCOMB, Respondent.

*Incompetent person — not required, on an application for the discharge of his committee, to submit to an examination by physicians named by those opposing it — the proper procedure.*

A person adjudged to be incompetent, who presents a petition alleging that he has recovered and asking that the committee of his person and property be discharged, should not be required to submit to a physical and mental examination by physicians designated by the opposing parties, notwithstanding the fact that he did not appear before the referee to whom the matter was referred.

In such a case the petitioner should be called before the referee and there examined in the presence of such physicians as the parties opposing the application desire to have there, or else an examination by some independent physicians who are satisfactory to the counsel for the opposing parties should be allowed.

PATTERSON and McLAUGHLIN, JJ., dissented.

APPEAL by Hermann D. Newcomb, the son, and Florence W. Newcomb, the wife, of H. Victor Newcomb, an incompetent person, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 16th day of January, 1901, denying their motion directing and requiring H. Victor Newcomb to submit to a physical and mental examination by certain physicians named in the petition, in order to allow them to testify as to his mental condition.

*Burton N. Harrison*, for the appellant.

*De Lancey Nicoll*, for the respondent.

INGRAHAM, J.:

The petitioner in this action having been adjudged incompetent, presented a petition alleging that he had recovered and asking that the committee of his person and property be discharged and that he be restored to the control of his property. Upon the presentation of that petition it was referred to a referee to take proof as to the condition of the petitioner. Under this reference the petitioner proceeded and presented certain evidence, when the attorney for the petitioner's wife and children, who were opposing this application, asked the referee to direct the petitioner to submit to an examination by certain physicians named so that they could testify as to his mental condition. The referee held that he had no right to make such a direction and certified the matter to the court for its determination. Upon this certificate of the referee and affidavits an application was made for an order requiring the petitioner to submit to a physical and mental examination by the physicians named to enable them severally to reach and express an opinion under oath before the referee for the information of the conscience of the court as to whether or not the petitioner is of sound mind and competent to care for himself and for his property now in the custody of the said committee. That motion was denied, and from the order denying the same this appeal is taken.

It appeared that in the proceeding before the referee the petitioner was not called and examined, he relying upon the testimony of physicians who had examined him and others as to his present mental condition. After the witnesses called by the petitioner had been examined, counsel for those opposing the granting of the petition asked that several physicians — naming them — should be permitted to make a physical and mental examination of the petitioner. Counsel for the petitioner stated that he had advised the petitioner not to submit to the examination of the physicians nominated by counsel representing the opposing parties; he made specific objections to several of the physicians nominated, offered to allow an examination by any physician nominated by the referee, and stated, "we have no objection to having Mr. Newcomb examined by any

FIRST DEPARTMENT, MARCH TERM, 1901.              [Vol. 58.

competent alienists appointed by the court, who have not committed themselves already as to his mental condition, but who can approach the subject with an open mind and impartially advise the court on the subject." But that proposition was declined, and the motion that was then made was to compel the petitioner to submit to an examination by these special physicians to whom objection had been taken.

Under all the circumstances, we think this application was properly denied. Counsel for those opposing this application are, undoubtedly, embarrassed by the fact that the petitioner who now claims to be fully restored had not been called as a witness before the referee, as is usual in proceedings of this character. The petitioner is, presumably, an incompetent person, having been so adjudged, and the burden is upon him of satisfying the court that his health has been so restored that he is now able to care for himself and for his property. It is difficult to see why, if he is restored to health, he should not have presented himself before the referee for examination, so that the referee could judge from an inspection of the petitioner, and his answers to the questions asked him whether he is competent to care for himself and his property. Whether the court would be justified in granting this application, where the petitioner has refused to present himself for examination before the referee, is a question that we are not now called upon to determine. What is sought upon this application is to compel the petitioner to submit to a private examination by physicians named by those opposing his discharge, to the particular physicians named the petitioner having specific objections. While some of these objections do not appear to be of much weight, especially the objection that certain of the physicians had before expressed an opinion that the petitioner's mind was permanently affected, still there does not seem to be any reason why these specific physicians should be the ones to examine the petitioner. What the court really desires is evidence of the mental condition of the petitioner at the present time. We think that, before the prayer of this petition should be granted, either the petitioner should be called before the referee, and there examined in the presence of such physicians as those opposing the application desire, or else an examination by some independent physicians who are satisfactory to counsel for the opposing relatives,

should be allowed; but we, do not think that, under the circumstances here detailed, the court below incorrectly exercised its discretion in denying this application to require the petitioner to be examined by these specified physicians.

The order appealed from should be affirmed, but, under the circumstances, without costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred; PATTERSON and McLAUGHLIN, JJ., dissented.

PATTERSON, J. (dissenting):

I am not able to concur in the views of the majority of the court in this matter, but am of the opinion that the application of the appellants to the court below should have been granted in part. They were given a standing in court and allowed to participate in the proceeding instituted by the petitioner to supersede the commission appointing a committee of his person and of his estate. Proceedings of this character are altogether within the control of the court, and, strictly speaking, there are no parties to them in the ordinary relation of parties to adversary proceedings. When a petitioner applies to the court for a *supersedeas* of a commission, the judge before whom the application is made has wide discretion as to the method of conducting the inquiry into the mental condition of the applicant. He may cause witnesses to be brought before him and examined in open court, or he may hear the application upon affidavits, or he may refer the matter to a referee to take testimony and report. "The manner in which he will ascertain whether the alleged lunatic has become sane and competent to take care of himself and his property rests in his discretion." (*Matter of Blewitt*, 138 N. Y. 148.)

When the petition of this incompetent person was presented, the learned judge before whom it came, for very satisfactory reasons, concluded to appoint a referee to take testimony and to report thereon. In the opinion written by the learned judge in making that order it is said that the petitioner had twice been declared to be an incompetent person, and that the testimony before the court tended to establish the fact that he was a victim of insane delusions and at times violent and dangerous. It was evident to the learned judge that the then present mental condition of the petitioner was a mat-

ter in respect of which expert medical testimony would be proper, and he remarked that "the value which should be attached to the opinions of the medical experts can only be determined upon proceedings which would disclose what knowledge these physicians have of the family history, habits of life, health and general past conduct of the petitioner." In that suggestion of the court I fully concur. Acting upon it, evidently, the petitioner called before the referee as witnesses expert alienists, some of whom examined the petitioner as to his mental condition since his commitment, but others of whom have known him for years. One of them, Dr. Dana, signed the certificate upon which the petitioner was committed to a sanitarium in 1899; another, Dr. Sprague, was a witness before the sheriff's jury on the inquiry as to petitioner's mental condition in 1899, and he then testified that the petitioner was insane, and there was other testimony of experts on the same subject. The direct effect of all the testimony given by the medical experts for the petitioner is that he is entirely sane at the present time and competent to manage his own affairs, but he has not appeared before the referee nor put himself in such a position that he could be the subject of observation or examination by other expert physicians who have been acquainted with him for years and who presumably would be able, upon observation, to express that valuable and reliable opinion concerning his present condition referred to in the opinion of the learned judge at Special Term,* of which mention has hereinbefore been made. The appellants have merely asked the court to allow those experts who can give the most intelligent and valuable opinions to examine the petitioner in order that they may testify to his present mental condition. There seems to be no sufficient reason why that application should have been denied, so far as it relates to expert witnesses, that is, to skilled alienists who, from their past knowledge of the petitioner, are better qualified to testify after examination as to his present condition than any other class of witnesses. The denial of the motion, so far as it related only to medical practitioners, not skilled alienists, was proper. Those physicians may be called as witnesses to testify to their knowledge of the past history of the petitioner, but upon that branch of the case which involves scientific knowledge there is no reasonable

* The Special Term opinion is reported in 33 Misc. Rep. 417.— [REP.

ground upon which the best qualified persons should be excluded as witnesses. The reasons assigned by the petitioner for his objecting to them should not be entertained, namely, that they are disagreeable to him, and that because they have heretofore expressed an opinion as to the incurable character of his mental malady, they must necessarily be so prejudiced that they cannot now form an honest opinion as to his present condition, and that he would become unduly excited by being obliged to submit to an examination by them.

I think the expert witnesses whose testimony was sought by the appellants in aid of the inquiry should be permitted to examine the petitioner under such conditions, if proper, as the court might see fit to direct, and I think the order should be reversed and the appellants be allowed to call before the referee such of the proposed witnesses named by them as are experts, but not those who were merely attending physicians and not shown by the appellants to be expert alienists.

McLAUGHLIN, J., concurred.

Order affirmed, without costs.

